## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| William W. Camden, Jr., | : | |
| Plaintiff, | : | |
| | | Case No. 3:19-cv-00362-TPK |
| vs. | : | |
| Andrew Saul, | : | Magistrate Judge Kemp |
| Commissioner of | | |
| Social Security, | : | |
| Defendant. | : | |

### OPINION AND ORDER

Plaintiff William W. Camden, Jr., filed this action seeking review of a final decision of the Commissioner of Social Security. That decision, issued by the Appeals Council on September 15, 2019, denied his application for social security disability benefits. Plaintiff filed a statement of errors on April 6, 2020 (Doc. 9) to which the Commissioner responded on May 21, 2020 (Doc. 11). The parties have consented to final disposition of this case by a United States Magistrate Judge. For the following reasons, the Court will **OVERRULE** the statement of errors (Doc. 9) and **DIRECT** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

### I.  INTRODUCTION

Plaintiff protectively filed his application on December 8, 2015, alleging that he became disabled on May 21, 2015. After initial administrative denials of his claim, Plaintiff appeared at a hearing held before an Administrative Law Judge on February 21, 2018. A vocational expert, Teresa L. Trent, also testified at the hearing.

The Administrative Law Judge issued an unfavorable decision on August 16, 2018. In that decision, she first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that he had not engaged in substantial gainful activity since the alleged onset date. The ALJ next concluded that Plaintiff suffered from severe impairments including obstructive sleep apnea, morbid obesity, Sjogren's disease, autonomic dysfunction, small fiber neuropathy, and sensorineural hearing loss. However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff

could perform a reduced range of light work. She concluded that Plaintiff could carry out the exertional demands of light work but had to be allowed to sit for up to five minutes after each thirty-minute period of standing or walking. He could frequently stoop, kneel, crouch, crawl, push or pull with left arm, and perform gross manipulation with his left hand. He could never climb ladders, ropes, or scaffolds and could not be exposed to unprotected heights or dangerous machinery, nor to very loud environments. Lastly, he could not operate a motor vehicle.

The ALJ determined that with these limitations, Plaintiff could not perform his past relevant work as a pest control worker, route supervisor, and regional branch manager. At the hearing, the vocational expert testified that someone with the residual functional capacity determined by the ALJ could do certain light jobs including routing clerk, mail clerk, and inspector. The ALJ accepted this testimony as well as the testimony that these jobs exist in significant numbers in the national economy. As a result, she concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In his statement of errors, Plaintiff argues that the ALJ failed to account for the fact that due to his autoimmune disorder, he would be off task or miss work frequently enough that no jobs would be available to him. He asserts that the ALJ did not adequately discuss both his off-task behavior and his potential absenteeism and how they would have impacted his ability to work.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020)**,**

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III.  FACTUAL BACKGROUND

The Court will begin its review of the factual background of this case by summarizing the testimony given at the administrative hearing.  It will then recite the pertinent information found in the medical records.

Plaintiff, who was 43 years old at the time of the hearing, first testified that he lived with a girlfriend and several pets which she cared for.  He drove rarely and relied mostly on getting rides with friends or relatives.  He had worked exclusively in the pet control industry, ultimately becoming a manager and then a branch manager.  The latter job involved extensive driving.  His employer required him to stop working in 2015 due to his physical problems.  He believed that the unpredictability of his symptoms would prevent him from being hired in the future.

In 2015, he was hospitalized several times and was diagnosed with a bulging disc in his neck.  However, his doctor said that problem was not causing various symptoms he had been experiencing including bloating, tachycardia, and balance issues.  He had neck surgery in July of 2015 but that did not resolve all of his issues including a feeling that he was about to pass out.  His doctor had prohibited him from driving and had prescribed prednisone to treat his symptoms.  He took other medications as well for conditions such as head pressure, bloating, and gastritis. At some point he was diagnosed with Sjogren's syndrome (an autoimmune disease).

Plaintiff testified that one of his doctors had prescribed a seated walker for him to use, and he used it when grocery shopping or walking any distances.  He could sit and lift objects while seated but not while standing.  On a daily basis, if his conditions were flaring up, he stayed in bed until about noon; otherwise, he got up earlier and sat in a recliner.  He participated in a number of online support groups but otherwise had no regular daily activities.  He did no household chores other than cooking and was rarely able to attend sporting events in which his children were involved or to go fishing from a dock.  When his condition flared up, he also suffered from blurred vision.

The vocational expert, Teresa Trent, first classified Plaintiff's past work as ranging from sedentary to medium as usually performed and as ranging from semi-skilled to skilled.  She said that someone who could not drive could not do any of these jobs.  However, a person with the

ability to perform a limited range of light work as described by the ALJ could work as a routing clerk, mail clerk, and inspector. A person doing those jobs would be able to sit up to five minutes after every 30-minute period of standing or walking. If the person could only reach overhead, frontally, and laterally on an occasional basis, however, those jobs would be eliminated, but the person could be a rental clerk, counter clerk, or host, all light jobs; no sedentary jobs would be available. She said that use of a cane or other assistive device eliminated all light jobs, though, and being off task for more than 10% of the time or absent for more than one day per month was work-preclusive.

It is not necessary to provide an extensive summary of the medical evidence. Plaintiff's statement of errors essentially adopts the ALJ's summary of those records and, as Plaintiff says, the issue here relates to "the ALJ's interpretation of those facts and her opinions based on them...." *Statement of Errors,* Doc. 9, at 2. The Court will therefore recite the medical evidence only as necessary background for evaluating Plaintiff's claim, giving specific emphasis to the records referred to in the Commissioner's memorandum.

The file does not contain any treating source medical opinion stating that Plaintiff cannot do the specific work-related activities encompassed by the ALJ's residual functional capacity finding. The records confirm Plaintiff's testimony that he underwent an anterior cervical fusion in July of 2015. A post-surgery note indicated that he was doing well but still had some issues with his upper back and with blurred vision and chest pain. He was encouraged not to lift more than fifty to sixty pounds and to continue with his exercise program. Notes from the Dayton Center for Neurological Disorders indicate that he was reporting various additional symptoms such as bloating and an antalgic gait but that all testing was essentially normal except for an EMG showing left carpal tunnel syndrome, which was also addressed by surgery. By early 2016 he was described as having "widespread impairments" and his most severe symptoms were visual impairment and gait abnormality. (Tr. 1139). At that time, he was only mildly limited in his ability to stand, walk, and carry, and the exact cause of his various problems had not been identified.

According to statements he made to his other physicians, Plaintiff was subsequently diagnosed with severe small fiber sensory neuropathy and Sjogren syndrome. He had multiple sessions of physical therapy in 2016 and 2017 designed to improve his stability and lessen his back pain. He also visited the emergency room on many occasions and underwent various procedures including cardiac testing and tilt-table testing.

A consultative psychological examination was done on February 1, 2016, by Dr. Schulz. Plaintiff described his disabling condition as "autonomic dysfunction" and said he did not have a disabling mental impairment. However, he did report feelings of depression and anxiety. Dr. Schulz concluded that Plaintiff was able to complete routine repetitive tasks, get along with others, and respond appropriately to work pressure. (Tr. 1120-28).

Finally, state agency physicians commented on Plaintiff's physical abilities. Both of them

concluded that he could do a limited range of light work, and the ALJ gave those opinions great weight, as he did to the opinion of Dr. Schulz, concluding that they were consistent with the record, including the fact that Plaintiff's treatment was generally conservative with the exception of two surgeries, both of which improved his functioning.

## IV. DISCUSSION

It is somewhat difficult to identify the exact legal theory behind Plaintiff's statement of error. He has faulted the ALJ for not giving more weight to his testimony that due to flare-ups of his symptoms, he would not be able to work on a sustained basis, but he has not specifically contended that the ALJ made a legal error in the way that she considered whether Plaintiff's testimony was completely consistent with the medical and other evidence. The ALJ did engage in a substantial discussion of that issue, listing the relevant factors contained in the applicable regulation and ruling (20 C.F.R. §404.1529 and SSR 16-3p) and considering how those factors applied to Plaintiff's case. (Tr. 31-32). The ALJ concluded that restricting Plaintiff to a reduced range of light work took into account "the location, duration, frequency, and intensity of the claimant's symptoms, as well as precipitating and aggravating factors." (Tr. 31). The ALJ additionally relied on the fact that Plaintiff had received only conservative care and that most testing was negative. Finally, the ALJ noted that there was no objective verification of Plaintiff's testimony that his daily activities were as severely limited as he contended or that, if they were, it was due to his various medical conditions. (Tr. 32). Plaintiff has cited no legal authority suggesting that this method of analysis or the conclusions reached by the ALJ were erroneous; the only cases he cites in the argument portion of the statement of errors stand for the uncontroversial proposition that the answer to a hypothetical question posed to a vocational expert does not constitute substantial evidence if the question does not accurately portray the claimant's limitations.

It does appear that Plaintiff is asking this Court to re-weigh the evidence and to give additional weight to Plaintiff's subjective testimony. Generally, a reviewing court cannot do so. This principle is well-explained in *Anderson v. Saul*, 2019 WL 4740231, at *10 (E.D. Ky. Sept. 26, 2019), where the court said:

> The ALJ's evaluation of Anderson's testimony is entitled to deference by this Court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). As stated previously, "[t]he Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009). So long as the ALJ cited substantial evidence to support his conclusions, this Court may not re-evaluate his determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

That appears to be the case here. Absent some identifiable error in the ALJ's analysis of the subjective evidence, the Court lacks the authority to overrule the ALJ's conclusions. Since no

such error undermining the ALJ's determination on this issue has been demonstrated, Plaintiff's statement of errors does not provide any basis upon which the Court could order a remand. Consequently, that statement will be overruled and this case will be dismissed.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **OVERRULES** the statement of errors (Doc. 9) and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

 /s/ **Terence P. Kemp**
**Terence P. Kemp**
**United States Magistrate Judge**